
SMITH *vs.* ADAMS.

Where a spring is supplied by a hidden stream passing through the earth, the owner of the land above where the water of the spring issues from the earth has no right to divert such water, by an excavation or artificial works upon his own land, to the injury of the land owners below, who are supplied by the waters of such spring in their natural course or by prescriptive use.

But to entitle a party to come into the court of chancery for relief, by injunction, against the diversion of water to his injury, the amount of injury which he would sustain by a permanent diversion of the water must exceed $100. And where a bill was filed for a very trifling injury of that kind, it was dismissed with costs.

Where a land owner and those under whom he claims have diverted a part of the water of a spring from its natural course, for the use of their land, by means of an artificial conduit, and have continued to enjoy the water in that way for twenty years without interruption, a grant of the right to divert the water to that extent for the use of the premises will be presumed.

THIS was an appeal from a decree of the vice chancellor     April 18. of the second circuit. The complainant was the owner of a ten acre lot in the county of Dutchess, upon which there was a cloth dressing establishment and two or three small houses. He was also the owner of another lot of one acre, called the spring lot, adjoining the lands of the defendant, and separated from the ten acre lot by the Dutchess turnpike. Upon the spring lot, and only a few feet below the defendant's line, there issued out of the slate rock from the direction of the defendant's land a perennial spring; the waters of which, when flowing in their natural channel, ran across the spring lot and thence through the defendant's lands situated lower down, into a creek which ran through the ten acre lot, at a point below the complainant's ten acre lot. In 1804, the owner of the two lots now belonging to the complainant laid an aqueduct of logs, of one and a quarter inch bore, from the spring, across the turnpike, to the ten acre lot, for the purpose of carrying water to a distillery which was then in operation there. By this aqueduct the greatest portion of the water of the spring was diverted from its natural course over the defendant's lands

below the spring lot, and was discharged upon the ten acre lot. This change of the natural course of the water had continued, by means of the aqueduct, and the waters thus diverted had been used for different purposes upon the ten acre lot, down to the time of filing of the complainant's bill, in 1831. The whole water thus diverted was seldom actually used by the complainant and those under whom he claimed, but a very considerable portion thereof had been suffered to run to waste. The defendant, and his father from whom he derived title to his lands above and below the spring, had for more than thirty years been in the habit of resorting to the spring and taking water therefrom for their cattle and for domestic purposes. In 1825, the defendant laid an aqueduct of logs from the spring to his house, and thereby conveyed a small portion of the water in that direction for the use of his family, &c.; and he continued to use the water in that manner without objection or molestation for about five years. In 1830, for some cause not explained, that part of the defendant's aqueduct which was continued for a short distance in the soil of the complainant's lot, to reach the spring, was torn up and destroyed by the complainant's direction. The defendant being thus deprived of the power of using a portion of the water in this way, dug down upon his own land, a short distance above the spring, until he struck the subteranean stream. And from this point he laid a new aqueduct of logs to his house, from which logs the water was discharged through a quill of half an inch diameter.

After the defendant's aqueduct was completed, the complainant filed his bill in this cause for a perpetual injunction to restrain the defendant from diverting the stream of water which supplied the spring, or from interfering in any manner with the water of the spring or the complainant's enjoyment thereof. The defendant denied the complainat's prescriptive right to divert the water of the spring from its natural channel; and claimed the right to use a portion of the water for domestic purposes in the manner he was then using it by means of his new aqueduct. He also insisted that sufficient of the water was at all times left for the supply

of the complainant's aqueduct of one and a quarter inch bore at the spring ; and that if the complainant had not sufficient water for all useful purposes, it was because he suffered his aqueduct to get out of repair, and permitted the water which was received into it at the spring to run to waste. Many witnesses were examined by each party as to the manner in which the waters of the spring had been used by the parties and those under whom they had derived their titles, for the last twenty-five years before the filing of their bill, and also upon the question of fact whether the water used by the defendant and his family, by means of his aqueduct, prevented the accustomed quantity from entering the complainant's logs at the spring.

The vice chancellor, upon the hearing before him, decided that the complainant had established a prescriptive right to divert so much of the water of the spring as would pass through an aqueduct of one and a quarter inch diameter, and to use the same at his discretion ; and to have the whole of the residue of the waters to pass over his spring lot in their natural course. He therefore decreed accordingly, and granted a perpetual injunction to restrain the defendant from diverting any portion of the waters which supplied the spring, from their natural channel, by any aqueduct or water course whatever. He also ordered the defendant to pay the costs of the suit. From this decree the defendant appealed to the chancellor.

*J. Hooker & R. Wilkinson,* for the appellant. The water, the right to the use of which is the point in controversy, having its original source on the defendant's land, and after flowing a short distance on complainant's land again, as a small rivulet or brook, flows in its natural course upon defendant's land ; and the defendant and those under whom he claims have had from time immemorial, and he still has the natural and legal right to its reasonable use and enjoyment. The authorities cited by Chancellor Kent and by Angel, (3 *Kent's Com.* 353, *and Angel on Wat. Co.* 35, 42,) establish the following principles :—That every proprietor of land through which water passes has naturally an equal

right to its use and enjoyment, without unnecessary dimunition, for domestic, manufacturing and agricultural purposes. 2. He must so use and apply it as to work no material injury to his neighbor below him, who has an equal right to its subsequent use. 3. Streams (and springs) of water are intended for the use and comfort of man, and it would be unreasonable and contrary to the universal sense of mankind to debar a proprietor from the application of the water to *domestic*, agricultural and manufacturing purposes. 4. Some injury may inevitably happen in this use, by consumption, evaporation, &c. but a right of action would not necessarily arise from it, but would depend on the nature and extent of the injury, and the manner of using the water. 5. All that the law requires is that he should use the water in a reasonable manner, and so as not to destroy, or render useless, or materially diminish or affect the like application of the water by the proprietors below.

The use of the water by this defendant comes within all these principles. It has been reasonable in quantity; it has been applied only to domestic purposes, which are legitimate and proper objects of its use; it has been taken in a usual and customary manner, recognized as such by the usages of the country, and of civilized society; it has not been diminished in quantity beyond the actual and necesary wants of the defendant for legitimate purposes. The complainant, and those under whom he claims, have not acquired a right to the waters of this spring or stream, by 20 years exclusive and adverse enjoyment, to the extent and in the mode and manner now claimed; which is necessary to create a presumption of a grant of the right to appropriate the whole, or to the extent claimed, or to divert the water from its natural course to the injury of another. (3 *Kent's Com.* 355, 6.) It requires 20 years exclusive enjoyment of water in a particular manner, to raise a presumption of a grant to use it in that manner. The use must be adverse. The general and established doctrine is, that an *exclusive* enjoyment of water in any particular way for 20 years without interruption, becomes an adverse enjoyment sufficient to raise a presumption of title. The presumption

may be repelled by circumstances. This right is confined to the extent and mode of enjoyment. All that the law requires is that the mode of using it should not be materially varied to the prejudice of other owners. He cannot materially vary the enjoyment to the prejudice of his neighbors. The use of the water by complainant, or those under whom he claims, does not give him the protection of any of these principles. The defendant has a right to a reasonable participation in the waters of the spring itself, which is as much upon his own land as upon the land of the complainant. He has a natural right to its reasonable enjoyment, on the principles above laid down; it being upon his own land, no matter whether below or above the surface. He has a prescriptive right to the use of it to the extent and in the manner he has used it; that is, in common with the owners of the spring lot, and for *domestic purposes*, by reason of his and those under whom he claims, having had the undisturbed and unquestioned enjoyment of it, to that *extent* and for those *purposes*, for more than 20 years previous to 1830, and from time immemorial.

*H. Swift*, for the respondent. It is an invariable and universal rule of the court of chancery to found its decrees upon some matters put in issue; (6 *John. Rep.* 559) and counsel have a right to presume that testimony taken to points not in issue will be disregarded. (2 *John. Ch. Rep.* 355, *per Kent, Ch.*) There is no pretension set up in the answer, that the defendant or those under whom he claims, ever had possession of, or claimed any title to, the spring lot; and the evidence establishes a disclaimer by him and them of any such claim or title. The complainant has established a clear paper title to the spring lot and to the ten acre lot. He and those from whom he derives title have had the uninterrupted possession as owners of both lots, accompanying that title, for the last thirty-five years. It is admitted by the answer that the spring has from time immemorial been upon the south part of the spring lot. As much of the waters of the spring as could pass through an aqueduct of an inch and a quarter diameter has been taken

from its natural course, and used and appropriated by the complainant and by those under whom he claims, for about twenty-nine years last past; except when unlawfully interrupted by the defendant, in 1825 and 1830. And the complainant and those under whom he claims have used and appropriated the waters of the spring with the full knowledge of the defendant and those under whom he claims. *The defendant* and those under whom he claims lived near to and in sight of the spring, and occupied personally the land over which the defendant alleges the natural course of the water was, and from which the water was taken away. This appropriation and use are presumptive evidence of right in the complainant to the waters of the spring, to the extent of that appropriation and use, and give to him an undoubted title to protection from interruption in the enjoyment of that right. Any incorporeal right may be acquired by an uninterrupted enjoyment of 20 years, (2 *Saunders' Rep.* 175, *note.*) The same doctrine is recognized by the counsel of both parties and by the court in *Platt* v. *Johnston & Root*, (15 *John. Rep.* 213,) and also in *Merritt* v. *Brinckerhoof & Van Waggoner*, (17 *John. Rep.* 306.) Every proprietor has a right to the natural flow of water without dimunition or alteration, unless some other person has acquired a right to a particular use of it by 20 years exclusive enjoyment of the water in any particular manner which affords a conclusive presumption of right in the party so enjoying it derived from grant or from act of Parliament. (*Bealy* v. *Shaw*, 6 *East's Rep.* 208.) An uninterrupted enjoyment for 20 years of a spring of water in a particular manner, by the owner of the close in which it first issued above ground, affords a conclusive presumption of right in the party so enjoying it. (1 *Camp. Rep.* 463.) The defendant has made a permanent diversion of the waters of the spring, entirely from the land of the complainant, as far as they can be diverted by an aqueduct of the size and capacity of the defendant's, and the complainant will be greatly and permanently injured unless the decree of the vice chancellor is sustained and the injunction made perpetual. And a perpetual injunction was the prop-

er remedy of the complainant. (2 *John. Ch. Rep.* 162. 1 *Paige's Rep.* 416.)

THE CHANCELLOR. I concur with the vice chancellor in the conclusion that the evidence in this cause establishes a prescriptive right in the complainant to divert a portion of the waters of the spring from their natural channel across the defendant's land, in the manner and to the extent that the complainant and those under whom he claims have been in the habit of diverting the same since 1804. In the case of *Belknap* v. *Tremble,* (3 *Paige's Rep.* 605,) I had occasion to advert to the rule of law on this subject, as correctly laid down by the learned commentator on American law, that the exclusive enjoyment of water in a particular way for twenty years or more, without interruption, is sufficient to raise a presumption of a grant to use it in that manner; and that it is not necessary that the person claiming this prescriptive right should have used the waters exactly in same way for the whole twenty years, provided the mode of using it has not been materially varied to the prejudice of the rights of others during that time. In the present case the water diverted from the spring to the ten acre lot was at one time used for the purposes of a distillery, at another for scouring and dressing cloth, and at other times for domestic purposes at the dwelling houses on the complainant's ten acre lot. But the extent and manner of diverting the water of the spring for these several purposes, by means of an aqueduct of a particular size and construction at the spring, has at all times been substantially the same. The prescriptive right established, therefore, is not a right to divert water for any specific purpose, or to divert so much water as may be necessary for a particular object; but it is the right to divert the water in a particular manner and to a certain extent, from its accustomed channel, for the purpose of being used on the complainant's ten acre lot.

Although the complainant's right to the use of a portion of the water of the spring out of its natural channel is thus

established by prescription, the defendant's counsel insists that the complainant has not been deprived of that right, in point of fact, by any act of their client ; and that the deficiency of water at the factory, if any, was the result of the complainant's own negligence in permitting the strainer at the head of his aqueduct to be obstructed by leaves, &c. or in suffering the aqueduct to be out of repair so that the usual supply of water which was received into the same at the spring ran to waste.   Upon this point I think the weight of testimony is clearly with the defendant; and such appears to have been the opinion of the vice chancellor.   He says, " Perhaps, taken altogether, the weight of evidence supports the defendant's allegation that the quantity of water in the complainant's aqueduct is not diminished by the act of the defendant."   He therefore appears to have based his decree, for a perpetual injunction against the defendant and for costs, solely upon the technical right of the complainant to have all the residue of the water of the spring, which was not wanted for the supply of his aqueduct, flow in its natural channel for a few rods upon his spring lot.   It is necessary then to examine whether the diverting of water found in the earth in the defendant's own land, to the extent to which the water has been diverted by Adams in this case, entitles the complainant to the extraordinary remedy of a perpetual injunction under a decree of this court.

Upon principle I think the rights of the parties must be the same whether the spring issues from the earth upon the land of Adams, or after passing under ground through his land first makes its appearance upon the surface of the earth upon the lot of Smith, a little further down.   The only difficulty presented in the latter case is to establish the fact that the water diverted is the same which in its natural course issued upon and flowed across the lands below. And such was the decision of Lord Ellenborough in the case of *Balston* v. *Renstead*, (1 *Camp.* 463.)   Here the fact is clearly established that the stream of water of half an inch in diameter, which the defendant has diverted to his house by means of the aqueduct upon his own land, is a part of the larger stream which naturally issued from the

earth upon the spring lot below.   The law being well set-
tled that the owner of the superior heritage has no right to
detain or divert the water which passes through his land, to
the injury of those who were accustomed to receive it upon
their lands below, there can be no reasonable doubt of the
complainant's right to sustain an action, in the appropriate
tribunal, for this abstraction of a part of the water of the
spring, if he has in fact sustained any damage either direct-
ly or by the prospective diminution of the value of the
spring lot.   (*See Arnold* v. *Foot,* 12 *Wendell,* 330.    *Wil-
liams* v. *Moreland,* 4 *Dowl. & Ryl. Rep.* 583.    *Mason* v.
*Hill,* 2 *Nev. & Man. Rep.* 747.)

But in this case I find no evidence from which it can fairly
be inferred that the complainant has sustained any injury
whatever on the ground that the water which flows through
the defendant's half inch quill is not suffered to run in its
accustomed channel across the corner of the spring lot.
The defendant might therefore say to the complainant, in
the language of Latona to the Lycian clowns,

> " What rudeness *water* for my use denies,
> " Whose endless store the common world supplies ?
> " Nor light nor air did Heaven create for one,
> " Nor gentle streams."                              *(Ovid's Met. 4.)*

Indeed it appears from the testimony, that the complainant
had himself said he would have been willing to let the de-
fendant have the water for the use of his family for six
pence a year.   And as he waited until the defendant had
completed his aqueduct before he applied to this court for
an injunction, I think he should have been left to his appro-
priate remedy by a suit in a justice's court to recover the
damages, if any, which he had sustained by the defendant's
proceedings.   (*See Coalter* v. *Hunter,* 4 *Rand. Rep.* 58.)

Again ; had the complainant succeeded in satisfying the
court that he had sustained a few dollars damages by the
wrongful act of the defendant, the bill should have been dis-
missed with costs on the ground that the claim was wholly
beneath the dignity of this court.   The legislature has wisely
ordained that parties shall not be subjected to the expense
of litigating questions of property here, where the object to

be obtained by the complainant's suit is of trifling impor-
tance when compared with the necessary expense of a
chancery suit.   And the statute is imperative, that this court
shall dismiss every suit concerning property where the mat-
ter in dispute, exclusive of costs, does not exceed one hun-
dred dollars.   (2 *R. S.* 173, § 37.)   In this case, as the de-
fendant had not diverted the water to the injury of the com-
plainant's prescriptive right to carry a portion of it through
his aqueduct to the ten acre lot, the only real ground of
complaint at the time of filing the bill was the amount of in-
jury which had been or might thereafter be done to the
spring lot, in consequence of the diminution of the quantity
of water which would naturally have flowed across the
corner of the same after supplying the complainant's aque-
duct.   And to make this a matter in dispute of the value of
$100, the amount of the injury, present and prospective, must
have amounted to that sum.   In other words, the continued
injury to the spring lot must have been equal to six or seven
dollars annually, or the interest on $100.   If the complain-
ant in the present case has sustained any injury whatever,
of which fact I must still be permitted to doubt, no one who
reads the testimony can believe that the damage he has sus-
tained or ever can sustain, by this trifling diminution of the
quantity of water flowing across the spring lot will amount
to one quarter of that sum.   It may be said, perhaps, that
the right of the complainant to divert the water to the ten
acre lot was disputed by the answer, and that such right was
worth more than $100.   The testimony shows, however,
that the defendant had not interfered with that right, and
that on the contrary he had endeavored to construct his own
aqueduct in such a manner as to leave the complainant in
the full enjoyment of that right.   It is evident, therefore,
that if the residue of the water had not been diverted from
its accustomed channel across the spring lot, the bill would
have been dismissed.   That part of the case cannot then be
brought in aid of the jurisdiction of the court as to another
and distinct claim ; nor can it excuse the complainant from
paying the costs of a suit which should not have been com-
menced in this court.

The decree of the vice chancellor must be reversed with costs, and the complainant's bill be dismissed with costs to be paid to the defendant. The decree of dismissal must, however, be without prejudice to any right the complainant now has or may hereafter have to sue the defendant, in the appropriate tribunal, for diverting the water from its natural course to where it issues from the earth on the spring lot. But the parties are not to be again permitted to litigate the question whether the defendant had, previous to the filing of the complainant's bill, actually diverted the water which had been accustomed to flow through the aqueduct to the ten acre lot ; as that question has been fully litigated here upon its merits, and the decision of the court is against the complainant thereon. But there being no doubt as to the prescriptive right claimed, if the defendant shall alter the manner of using the water by means of his aqueduct, so as to diminish the quantity of water which flowed to the ten acre lot at the time this suit was commenced, he will be responsible to the complainant for the injury thereby sustained.