## Case No. 3,864.

DEXTER v. PROVIDENCE AQUEDUCT CO.

[1 Story, 387.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1840.

WATERS AND WATER COURSES—INJURY TO SPRING—INJUNCTION—SUBMITTING FACTS TO JURY.

Where a bill in equity charged the defendant with digging and sinking a deep well and fountain, and thereby occasioning a diversion of the water from a certain spring and watercourse on the meadow land of the plaintiff, so as to render the same dry during a portion of the year, and prayed for an injunction and relief therefrom; and the answer denied the facts stated in the bill, alleging, that the diminution of water was occasioned by other and natural causes; It was *held*, that if the facts were, as alleged in the bill, the plaintiff was entitled to the relief sought. But, in consideration of the contradictory nature of a great mass of testimony, relating merely to the matter of fact, and dependent upon the credibility of the witnesses, the court proposed, that the following questions should be submitted to a jury, to aid it in its decision: (1) Whether there was any such diversion of the water, as that alleged in the bill. (2) If so, what damages have been sustained thereby. (3) What is the permanent diminution or loss in value of the plaintiff's meadow land, occasioned thereby.

Bill in equity for an injunction and relief. The bill in substance states, that on or about the 20th day of December, 1832, the plaintiff

[1] [Reported by William W. Story, Esq.]

[Henry H. Dexter] was, and still is, the lawful owner and possessor of a certain close or meadow, situated in the said city of Providence, containing about five acres and one half of an acre of land, and for twenty years and upwards, before that time, and the time of committing the injuries and grievances complained of, he, and those from whom he derives his title, had been in the uninterrupted, quiet, and peaceable possession and enjoyment of the same with all its rights and privileges, and of a certain spring and watercourse therein situated, and passing and flowing upon and over, and extending and running through a part of the meadow, for the purposes of irrigation and for drink for his cattle feeding therein all that time, and ought now to have it so run for the same purposes. That during all that time, they were accustomed to use said spring for these purposes, and thereby derived profit and advantage. That on or about said 20th day of December, 1832, the defendants, well knowing the premises and the great value and importance of the said spring and watercourse to the orator in this respect, and contriving and unlawfully confederating and intending to injure him, and deprive him of the use, benefit, and advantage of the water of the said spring and watercourse naturally flowing therefrom, as it had been immemorially accustomed to run and flow, and irrigate and fertilize said meadow, and supply drink for the cattle feeding therein, wrongfully and injuriously did dig, sink, and cut a certain deep well, fountain, or pit near to and adjoining the said meadow, of the depth of thirty feet and of the diameter of about twenty-five feet, and cut or dug a trench therefrom, and laid and placed therein large iron pipes or watercourses leading from the said fountain to divers parts of the said city; and on or about that day diverted, and continually thenceforward have drawn and diverted the water from the said spring and watercourse, and have so diverted the natural flow of the water, that the spring and watercourse are dry a considerable portion of the year, and the water is thereby hindered and prevented from running and flowing as it had been immemorially accustomed to run and flow over and across the said meadow, irrigating and fertilizing the same so extensively and beneficially, as it might and otherwise would have done, and as it had been accustomed to do; whereby the orator is and has been greatly injured, as set forth in the bill. The bill further states, that at the November term, 1835, of this circuit court, the plaintiff commenced an action of the case against the defendants, for the recovery of his damages before that time sustained, for the unlawful diversion of the water as before stated, and to establish his right, by judgment of court, to the natural flow of the water in the said spring and watercourse, for the purposes aforesaid; in which suit the defendants appeared and answered, and such proceedings were had, that the orator recovered a verdict, and judgment was rendered thereon for his damages for the wrongful diversion of the water, which judgment is in full force and not annulled; yet the defendants still continue to divert the water wrongfully and injuriously. And the bill prays, that the defendants may be restrained by injunction from continuing to divert the water, or drawing the same from their fountain through the said iron pipes, and for the appointment of a master to ascertain his damages by reason of the premises, and for general relief.

The defendants in their answer state, that they know nothing of the complainant's title to the said close or meadow, and leave him to make proof. That they were incorporated by the general assembly of Rhode Island, at their October session, 1831, for the purpose of supplying the city of Providence with sweet and wholesome water, as great inconvenience had been previously felt by the inhabitants, and the charter was applied for by them, and granted by the general assembly to remedy the inconvenience. That they dug their fountain in December, 1832, on land previously purchased by them, consisting of one acre and a quarter. That in January, 1833, the laying of their water pipes was completed, and they began and have continued to supply the inhabitants with water. That the digging of their fountain and the drawing the water therefrom has no effect whatever in diminishing the quantity of water in the plaintiff's spring or watercourse. That from the time of digging the fountain, there has been a succession of drier seasons than had been known for many years before. That a number of the small streams and springs in the neighbourhood of Providence have been very low, and some of them dry, during the last five years, which have not been dry for many years before; and that the drying up of the plaintiff's spring and watercourse has been owing to the dryness of the seasons, and not to the defendants' fountain; and that it was not unusual for the plaintiff's spring and watercourse to be dry before the fountain was sunk, and that they were always dry in dry seasons. That the verdict, rendered in the said suit at law, was against the evidence; that within two days after the rendition of said verdict, and before judgment, the counsel of the defendants presented a petition to said court to set aside the verdict, and for a new trial, which petition was founded on two grounds; first, that the verdict was against the evidence; second, that after the rendition of the same, the defendants had discovered new and material evidence, which they had no opportunity to introduce; but that the counsel for the defendants were informed by the court, that the defendants were not bound by the said verdict, except for its payment, leaving the general question open and undecided, and if petition were granted, it would be on pay-

ment of costs, which would be about equal to the verdict; and that the main question might as well be tried in a second action, as by a new trial. And thereupon, the plaintiff's counsel being present, the defendants' counsel withdrew the said petition. The defendants on their answer further state, that they then had such new and further evidence, as would have disproved the truth of the said verdict, and shown, that their fountain had not in anywise diminished the water in the plaintiff's said spring and watercourse, which evidence they had not had an opportunity to introduce during the trial. That they would have been able to prove by said evidence, that previous to digging the said fountain, in all dry seasons, the plaintiff's spring and watercourse were as much dried up as since; and that such evidence the defendants were unable to obtain previous to the trial, although they had made diligent search and inquiry. The defendants further contend, that the said verdict is not evidence against them in this case. That it could not have been, had no petition been presented and withdrawn. That the action was an action on the case, and the inquiry confined to the effect of the fountain previous to the date of the writ. The act might have been proved to have been then injurious, but is not necessarily a continuing injury. That if a connection be established between them, they deny, that because it is injurious in a dry season, it would be so in a wet season. In wet seasons there would be a redundancy of water for the purposes stated by the plaintiff, and if then diminished by the fountain of the defendants, it would not be disadvantageous to the plaintiff. The diminution must be injurious to sustain the plaintiff's bill; but the defendants deny, that it has any effect whatever in a dry or wet season on plaintiff's spring or watercourse. That the constant succession of almost unprecedented dry seasons, which have occurred since the digging of the fountain, has rendered it impossible to ascertain, by actual observation, what the state of the spring and watercourse would be in a wet season. That if, as the defendants assert, the fountain has no effect in a dry season, it can have no effect in a wet. That the said spring is not a natural spring, but a hole has been dug about three feet deep, in a wet place, and a barrel placed therein, the water flowing from the wet land, adjoining, fills up this hole and runs off, constituting the spring and watercourse in the plaintiff's bill described. To this answer the plaintiff filed a general replication.

The cause came on to be heard at this term upon the bill, answer, and other pleadings, and the evidence taken by the parties; and was argued by—

Mr. Snow, for plaintiff.

R. W. Greene and Mr. Whipple, for defendants.

STORY, Circuit Justice. This cause has been very ably argued upon both sides. It does not appear to me to involve any real difficulty in point of law; but the great stress of the controversy rests on matters of fact. The short statement of the ground of the suit is, that the plaintiff asserts himself in the bill to be the owner of a certain meadow in Providence, containing about five acres, and that, for twenty years and more, before December, 1832, he, and those, under whom he claims and derives his title, were in peaceable possession thereof, with all the rights and privileges of a certain spring and watercourse thereon situated, and passing and flowing upon and over, and extending and running through a part of the meadow, for the purpose of irrigation, and for drink for his cattle feeding therein; that the defendants, knowing the premises, in December, 1832, dug, sunk, and cut a deep well, fountain, and pit in an adjacent close of the depth of thirty feet, and of the diameter of twenty-five feet, and dug a trench therefrom, and laid and placed iron pipes or watercourses, leading from the well or fountain to the city of Providence, and have ever since continued to do so; whereby they have diverted the water from the said spring and watercourse, and so diverted the natural flow of the spring and watercourse, that the same are dry for a considerable portion of the year, and the water is thereby hindered and prevented from running and flowing, as it had been immemorially accustomed to run and flow, over and across the said meadow, irrigating and fertilizing the same. Now, the title of the plaintiff to the meadow is not controverted; and if the gravamen, thus stated, is made out by sufficient proofs, I have no doubt that the plaintiff is entitled to relief under the bill. The case of Balston v. Bensted, 1 Camp. 463, is directly in point, if, indeed, the same principle of law had not been fully recognized from very early times. See Tyler v. Wilkinson [Case No. 14,312]; Hazard v. Robinson [Id. 6,281]; Sury v. Pigot, Poph. 166.

The defence principally turns upon a denial of the matter of fact, that the spring and watercourse have been diverted at all, or, if diverted at all, that it has been caused or occasioned by the digging of the well and fountain and water pipes of the company. In short, the company attribute the diminution of the water to other natural causes, wholly independent of their well, fountain, and aqueduct. There is a large body of evidence, introduced into the cause by both parties, which is, in many of its most important bearings, contradictory or conflicting. The weight, which ought to be attached to it, therefore, must, in a great measure, depend upon the comparative credibility of the respective witnesses. It appears to me, that under these circumstances, and in matters, connected with the common business of practical life, where the experience of a jury

might be of great advantage to aid the court in its ultimate decision, it is exactly such a case, as ought to be submitted to a jury upon an issue to be framed for that purpose. I am the more disposed to have this course pursued, because both the bill and answer admit, that there has been one trial of the question by a jury, on the common law side of this court, in which a verdict was found for the plaintiff. That verdict is alleged by the defendants to have been entirely unsatisfactory, founded upon very imperfect evidence, and materially affected by the new evidence, which has since been obtained. I cannot, therefore, give it full weight under such circumstances, especially as a new trial was intended to be moved for, but was waived upon a supposed suggestion of the court, that small damages only were given, and it might be as well to leave the merits to be decided in another action, or in a bill in equity. If another verdict is found on the same side, it will almost of itself be decisive. If found the other way, it will take away the entire force of the former verdict, which is now greatly relied upon by the plaintiff, as a strong ground for a perpetual injunction.

What I propose, then, is, to have an issue framed to be tried by a jury at the bar of this court to ascertain: (1) Whether there has been any diversion and drying of the spring or watercourse, occasioned by the digging and sinking of the fountain and aqueduct of the defendants. (2) If there has been any such diversion and drying, what damages have been sustained thereby by the plaintiffs, since the former suit was brought, and before the present bill was filed; or, if it be thought preferable by the parties, (3) what is the permanent diminution or loss in the value of the plaintiff's meadow land, occasioned by the defendants' digging and sinking the fountain and the aqueduct, as stated in the bill. See Hammond v. Hall, 10 Sim. 551.