## SUPREME COURT.

JABEZ L. ELLIS agt. JOHN DUNCAN, DAVID DUNCAN, & JOHN P. DUNCAN.

Although the injunction, *sic utere tuo ut alienum non laedas*, is no doubt correct, yet it refers to such injuries only as the law will redress, and not to the large class which are usually denominated *damna absque injuria*. Of the latter class are such as result incidentally to one by the lawful exercise of the rights of another.

Therefore the owner of a farm may dig a ditch to drain his land, or open and work a quarry upon it, when by so doing he intercepts one of the underground sources of a spring on his neighbor's land, which supplies a small stream of water flowing partly through the land of each, and thereby diminishes the natural supply of water, to the injury of the adjoining proprietor. The damage resulting from it is not the subject of legal redress.

*Kings General Term, Dec.* 1855.
BROWN, S. B. STRONG, and ROCKWELL, Justices.

Ellis agt. John Duncan and others.

APPEAL from an order of special term granting a preliminary injunction.

AMBROSE L. JORDAN, *for plaintiff.*
CHARLES W. SANDFORD, *for defendants.*

By the court—S. B. STRONG, Justice. The question involved in this controversy is, whether the owner of a farm may dig a ditch to drain his land, or open and work a quarry upon it, when by so doing he intercepts one of the underground sources of a spring on his neighbor's land, which supplies a small stream of water flowing partly through the land of each, and thereby diminishes the natural supply of water, to the injury of the adjoining proprietor.

There can be no doubt of the correctness of the injunction, *sic utere tuo ut alienum non laedas ;* but I have frequently had occasion to remark that it refers to such injuries only as the law will redress, and not to the large class which are usually denominated *damna absque injuria.* Of the latter class are such as result incidentally to one by the lawful exercise of the rights of another. To award compensation for, or prevent the infliction of such injuries, would seriously arrest the march of improvement, and often so seriously impair the use of property as to render it of little or no value. The distinction between recoverable and irrecoverable damages, in cases of this description, is not very definite or clear. In some particulars the rule has been solemnly settled by uniform decisions, while in others, and generally such as are very near the dividing line, the determinations have been conflicting, and in many there have been none at all. The distinction turns generally, although not universally, upon the question, whether the damages are direct or consequential : in the latter cases, and especially where they result remotely from the exciting cause, they are not generally recoverable.

In the interruption of a surface current, the injury, from a diminution of the water, would seem to be palpable, and so far direct that it would originate a valid cause of action. There,

too, the owners have knowingly permitted the waters to flow in their natural course, for the benefit of all those whose lands they pass, from time immemorial. They have acquired their title with a full knowledge of what is visible, and (peremptorily) of the rights which result from it. But it is different where the principal stream is partially supplied by underground currents. The owners of the superior soil are not generally aware of their existence, and cannot be supposed to have voluntarily acquiesced in any appropriation of them. When they purchase, they are ignorant of any obstacle to the free use of their property *ab centro ad coelum;* and to arrest some valuable improvement, such as digging a well, or a cellar, draining the land, taking valuable stone from a quarry, or leveling the ground for building or agricultural purposes, because it would cause some consequential suspension, and, possibly, inconsiderable damage to another, would seem to be unreasonable and unjust. If the principle, that the man who interrupts a subsurface stream to the prejudice of his neighbor, commits a wrong for which the law will give redress, is sound, no one will be safe in purchasing land adjoining or near a private stream of water, as he may be restrained forever from making some valuable, and frequently, from the progressiveness of the age, necessary improvement.

It seems to me, that the rule that a man has a right to the free and absolute use of his property, so long as he does not directly invade that of his neighbor, or consequentially injure his perceptible and clearly-defined rights, is applicable to the interruption of the subsurface supplies of a stream, by the owner of the soil, and that the damage resulting from it, is not the subject of legal redress. The case of *Actor* agt. *Blundell* (12 *Mees. & Welsby*, 324) sustains that principle, and the case is cited with approbation by Ch. J. BRONSON, in giving the unanimous opinion of the court of appeals in *Radcliff's Executors* agt. *The Mayor, &c., of Brooklyn*, (4 *Comst.* 200.) The injury of which Mr. Radcliff's executors complained in that case was much greater than any which can result to the plaintiff in this action, from the supposed wrong committed by the defendants;

and although the facts were somewhat dissimilar, yet the principle which I have been considering is alike applicable to both.

If the injury of which the plaintiff complains had been actionable, I should doubt much the propriety of granting an injunction, unless it had been of a much more serious character than what appears from the papers presented to us. If an injunction should be proper, it must be perpetual, or at any rate, endure as long as the water continues to run. The plaintiff might, in order to prevent an inconsiderable damage to himself, interrupt and prevent improvements of real importance to the defendants, or those who may succeed them. A recovery of damages in an ordinary action would be a much more reasonable remedy; and the plaintiff may resort to that notwithstanding the decision of this appeal.

The order granting a preliminary injunction should be reversed, with ten dollars costs, and the injunction should be dissolved.