THE TRUSTEES AND INHABITANTS OF THE VILLAGE OF DELHI, and HENRY ENGLAND, *vs.* WILLIAM YOUMANS, Jr.

The law controlling the rights to subterranean waters is very different from that affecting the rights to surface streams. In the former case the water belongs to the soil, is part of it, is owned and possessed as the earth is, and may be used, removed and controlled to the same extent by the owner.

No action will lie for injuries caused by cutting off subterranean waters percolating the soil or running through unknown channels, and without a distinct or defined course.

An exception to this rule of law exists in the case of subterranean streams that have a known and well defined channel constituting a regular and constant flow of water. Such streams are subject to the same law with surface streams, and subject only to the like interruptions and interference.

A further exception exists in case of an injury done by cutting off such waters with malice. No person can wantonly and maliciously cut off on his own land the underground supply of a neighbor's spring or well without any purpose of usefulness to himself.

There can be no prescription where there is no adverse user, and there can be no adverse user without creating a right of action.

The use of water flowing from a spring on one's own premises for more than twenty years, will not entitle the owner of such premises to claim a prescriptive right to its continued use in the same manner.

Such a use by the owner of the premises is in no sense adverse or hostile to an adjoining owner; as it takes nothing which the latter has any right to use or enjoy. Consequently no grant can be presumed from his silence or acquiescence.

An individual has a right to dig on his own land to obtain water for proper and necessary uses at his house and barn which are on such land, although by so doing he materially interferes with the natural flow of water from springs issuing from the lands of an adjoining owner. *Per* BALCOM, J.

The ruling of Lord Ellenborough, in *Balston* v. *Bensted*, (1 *Camp.* 463,) and the *dictum* of Chancellor Walworth in *Smith* v. *Adams*, (6 *Paige*, 435,) to the effect that the owner of land out of which a spring of water issues may restrain the owner of adjoining land from digging in his own land so as to intercept the underground stream that supplies the spring with water, disapproved.

THIS was an action brought to restrain the defendant from digging on his own land, and thereby diverting the water from certain springs on the lands of England, from which the plaintiffs and others were in the habit of obtaining their necessary supply of water. Upon the trial of the case at

special term, before Justice BALCOM, the complaint was dismissed, and the plaintiffs appealed.

The facts are, that the palintiff England and the defendant are adjoining owners of real estate in the town of Delhi ; that there are no springs or water courses on the defendant's lands ; that there are two springs at least on England's land, one close to the defendant's line, and the other some two rods distant from such line ; that these springs for many years have been conducted into a reservoir, and from thence by pipes distributed to the plaintiffs and others ; the natural outlet from such springs was through said reservoir and in no event over the defendant's land ; that a well or excavation several feet deep was dug on the defendant's premises several years since, and before the defendant owned them, where water was obtained for the use of stock on said lands ; and such well or excavation did not materially affect the supply of water in such springs ; that said springs in their natural state ordinarily furnished the necessary supplies of water for the plaintiffs and others using therefrom, but after the interference of the defendant as hereinafter stated, such supply was diminished and was more frequently insufficient ; that the slope of the land is from the defendant's land on to said England's lands, so that water upon or in the defendant's land would naturally flow to and upon said England's land ; that the water flows to said springs by percolation through the defendant's soil and beneath the surface, and has no distinct and definite channel, or any known and defined course beneath the surface of the defendant's land ; that before the commencement of this action, the defendant sunk a ditch near the line between him and said England, until such ditch cut off such percolation to some extent, and thereby interfered with and diminished to some extent the flow of waters in said springs, and laid a pipe in such ditch for the purpose of conducting such waters to his premises, and did so conduct such waters to his house, barn and stables, buildings of great value on said premises, for ordinary

domestic and farming use, and such water were essential and necessary for the defendant, for the purposes aforesaid ; that the plaintiffs had for many years owned and enjoyed the right to use the surplus waters running from said springs in the manner stated in the complaint, and that the defendant had no right to enter upon said England's land, or to take water from said springs, or to divert the waters running therefrom into said reservoirs from such natural channel, nor has he done any of these things unless by the digging of the ditch upon his own lands near the line and near the said springs, and carrying the water obtained in such ditch in a pipe to his house, &c. as aforesaid.

*William Gleason,* for the plaintiffs, cited 6 *Paige,* 435 ; 1 *Story C. C. R.* 387 ; 28 *Verm. Rep.* 56 ; 3 *Kent's Com.* 439, 442 ; 12 *Wend.* 330 ; 6 *East,* 214 ; *Ang. on Water C.* §§ 109, 115, *and notes;* 1 *Camp.* 463 ; *Bassett* v. *Salisbury Manuf. Co.* (*Am. Law Reg. Feb.* 1864, *p.* 223 ;) *Dudden* v. *Guardians of the Poor,* (1 *Hurlst & N.* 627 ;) 7 *Exch.* 300 ; *Wheatley* v. *Baugh,* (25 *Penn. R.* 528 ;) 3 *Cush.* 107 ; 21 *Barb.* 230 ; 12 *Mass. R.* 220 ; 18 *Pick.* 117 ; *Acton* v. *Blundell,* (12 *Mess. & Wels.* 324 ;) 4 *N. Y. Rep.* 196 ; 19 *Barb.* 332 ; 21 *id.* 409 ; 15 *id.* 96 ; 17 *John.* 325 ; 1 *Law and Eq.* 241 ; *Domat's Civ. Law,* (*Cushing's ed.*) 615, 6 ; *Gale & Whately on Easm.* 216, etc. ; 75 *Law Lib.* 28 ; 9 *Eng. Law and Eq.* 513 ; 3 *Exch.* 748.

*Wm. Youmans, Jr.* defendant in person, cited 9 *Cush.* 171 ; 34 *Eng. Law and Eq.* 553 ; 1 *Waits' Law and Pr.* 795, 6, *and cases cited* ; 12 *Mess. & Wels.* 349, 350 ; 21 *Barb.* 230 ; 18 *Pick.* 117 ; 12 *Wend.* 330 ; 6 *Paige,* 435.

BOARDMAN, J. The following principles of law appear to me upon a careful examination too well settled to admit of controversy.

1. The law controlling the rights to subterranean waters is

very different from that affecting the rights to surface streams. In the former case the water belongs to the soil, is part of it, is owned and possessed as the earth is, and may be used, removed and controlled to the same extent by the owner. *Frasier* v. *Brown*, (12 *Ohio*, 304, 311,) where the defendant dug a hole in his land which cut off and stopped the sources and supply of a spring which had previously risen in and supplied the plaintiffs' land with water. *Halde-man* v. *Bruckhardt*, (45 *Penn.* 521,) where the defendant, in opening a mine, cut off the supply of water in a natural spring on the plaintiffs' land. The leading case of *Acton* v. *Blundell*, (12 *Mees. & Wels.* 336,) *approved in Chasemore* v. *Richards*, (7 *House of Lord's Cases*, 349,) where the defendant in sinking a coal mine cut off the supply of the plaintiff's well from the water of which plaintiff's mill was operated. *Pixley* v. *Clark*, (35 *N. Y. Rep.* 520, 526 ;) *Ellis* v. *Duncan*, (21 *Barb.* 230,) presumed to have been affirmed at the March term, 1864, of the Court of Appeals from a reference thereto in *Goodale* v. *Tuttle*, (29 *N. Y. Rep.* 466 ;) *Roath* v. *Driscoll*, (20 *Conn. R.* 533 ;) *Chatfield* v. *Wilson*, (28 *Verm. Rep.* 49 ;) *S. C.* (31 *id.* 358 ;) *Harwood* v. *Bruter*, (32 *id.* 724 ;) *New River Co.* v. *Johnson*, (2 *E. & Ellis*, 435.)

These and other cases establish the principle that no action will lie for injuries caused by cutting off subterranean waters percolating the soil, or running through unknown channels, and without a distinct or defined course. The head note of *Smith* v. *Adams*, (6 *Paige*, 435,) is adverse to this view, but the complaint in that action, which was to restrain such a diversion of waters, was dismissed for the want of jurisdiction, and the remarks of the chancellor on this subject are mere *dicta*, and entitled to still less weight in view of the modification of the decree in that case on appeal. (24 *Wend.* 585.) Nor is the case so fully reported as to show upon what precise facts it is based. In *Wheatley* v. *Baugh*, (25 *Penn.* 531,) it is cited as authority, upon

cutting off a subterranean *stream*, and elsewhere it is criticised and doubted as applied to percolations. (*Wash. on Easments*, 2*d ed.* 451, 372, 463, 385.) The cases of *Balston* v. *Bensted*, (1 *Camp.* 463,) and *Dickinson* v. *Gr. Junc. Canal Co.*, (7 *Exch.* 282,) were dissented from and overruled in the House of Lords in the case of *Chasmore* v. *Richards*, (*ante.*) (*See also Dexter* v. *Prov. Aqueduct Co.*, 1 *Story*, 387 ; *Bassett* v. *Salisbury Manuf. Co.*, 43 *N. H. Rep.* 579.)

2. An exception to this rule of law exists in the case of subterranean streams that have a known and well defined channel, constituting a regular and constant flow of water. Such streams are subject to the same law with surface streams, and subject only to the like interruptions and inter- ference. (*Wheatly* v. *Baugh, supra. Duddree* v. *Guar- dians, &c.* 1 *Hurls. & N.* 627. *Frasier* v. *Brown,* 12 *Ohio Rep.* 300. *Dickinson* v. *Gr. Junc. Canal Co.,* 7 *Exchq.* 301. *Whetstone* v. *Bowser,* 29 *Price,* 59 ; 45 *id.* 518.)

✝ 3. A further exception exists in case of an injury done by cutting off such waters with malice. No person can wantonly and maliciously cut off on his own land the underground supply of a neighbors' spring or well without any purpose of usefulness to himself. (*Greenleaf* v. *Francis,* 18 *Pick.* 117 ; *approved in Wheatley* v. *Baugh,* 25 *Penn.* 531 ; *and Roath* v. *Driscoll,* 20 *Conn. Rep.* 533. *Parker* v. *Boston and Maine R. R. Co.,* 3 *Cush.* 107. *Radcliff's executors* v. *Mayor of Brooklyn,* 4 *N. Y. Rep.* 195.) Such also is the rule of the civil law.

There are many acts, lawful in themselves, which become actionable if done with malice. (*Panton* v. *Holland,* 17 *John.* 92. *Brown* v. *Illius,* 25 *Conn. Rep.* 583.)

4. The evidence tends to show that some of the plaintiffs had used the water in question for a period of more than twenty years, so that the plaintiffs, to that extent, claim a prescriptive right to its continued use in the same manner they have here- tofore enjoyed such use. But reason and authority are alike hostile to such a claim as applied to this case. There can be no

prescription where there is no adverse user, and there can be no adverse user without creating a right of action. Now the use of the plaintiffs in this case was in no sense adverse or hostile to the defendant, it took nothing which he had any right to use or enjoy ; it gave him no right of action ; he was in no respect injured, nor was ·any right of his encroached upon. The defendant could not prevent the plaintiffs from using the waters that ran from the springs. Consequently no grant could be presumed from his silence or acquiescence. (*Chasemore* v. *Richards*, 2 *Hurls. & N.* 183. *Dexter* v. *Providence Aqu. Co.*, 1 *Story*, 393. *Dickinson* v. *Grand Junc. Canal Co.*, 7 *Exch.* 282. *Roath* v. *Driscoll*, 20 *Conn. Rep.* 533. *Wheatley* v. *Baugh*, 25 *Penn. Rep.* 528. *Frasier* v. *Brown*, 12 *Ohio Rep.* 311. *Haldeman* v. *Buckhardt*, 45 *Penn. Rep.* 519.)

5. If the defendant's excavation or ditch drew the water from the plaintiffs' spring instead of stopping the flow of water from the defendant's land to such ·spring, then the defendant would be liable in this action. (*Pixley* v. *Clark*, 35 *N. Y. Rep.* 520. *Dickinson* v. *Canal Co.*, 7 *Exch.* 282. *Cooper* v. *Barb*, 3 *Taunt.* 99.)

But I do not understand from the evidence or the findings of the judge any indication that such is the fact. It seems to me plain that the defendant in good faith and for his own necessary domestic and agricultural use has dug this ditch upon his own lands to secure water. While he has indulged in unkind expressions, I see no reason to differ from the judge who tried the cause, in finding that his purpose was one of usefulness to himself, and not of malice to his neighbors.

The conclusions to which I have come are very ably presented in *Wash. on Easements*, 2d ed. 440 *to* 467. They accord with the best interests of the general public. Proper cultivation of lands, working of mines and public improvements are allowed. While injuries as in this case, will be

inflicted on some, it is better than to suffer lands to lay waste, or mines to be unworked, or public improvements to be stopped.

For the reasons given, I am of the opinion that the judgment of the special term should be affirmed, with costs.

BALCOM, J.   The question in this case is whether the defendant had the right to dig in his land to obtain water for domestic and culinary purposes at his house, and to supply his horses and horned cattle at his barn, when by so doing he materially injured two springs of water that issued from adjoining land owned by the plaintiffs ; which springs had issued out of the plaintiffs' land from time immemorial ; but there was no surface flow of water above either of the springs, or to either of them from the defendant's land, or from either of them to the defendant's land.

This court decided at a general term in the second district, in *Ellis* v. *Duncan*, (21 *Barb*. 230,) that the owner of a farm may dig a ditch to drain his land, or open and work a quarry upon it, although by so doing he intercepts one of the underground sources of a spring on his neighbor's land, which supplies a small stream of water flowing through the land of each, and thereby diminishes the natural supply of water to the injury of the adjoining proprietor.  And that the rule that a man has a right to the free and absolute use of his property, so long as he does not directly invade that of his neighbor, or consequentially injure his perceptible and clearly defined rights, is applicable to the interruption of the subsurface supplies of a stream, by the owner of the soil ; and the damages resulting from such an interruption is not the subject of legal redress.

If the principle that the man who, by digging for a lawful and proper purpose on his land, interrupts a subsurface stream, to the prejudice of his neighbor, commits a wrong for which the law will give redress is sound, (in the language of Justice STRONG,) no one will be safe in purchasing land adjoining or near a private stream of water, as he may be restrained

: Trustees, &c. of the village of Delhi v. Youmans.

forever from making some valuable, and frequently, from the progressiveness of the age, necessary improvements.

The decision in *Ellis* v. *Duncan*, (*supra*,) is sustained by the very able opinion of Chief Justice Tindal, in *Acton* v. *Blundell*, (12 *Mees. & Wels*. 324,) in which the doctrine is laid down that a man who owns land upon which there is no surface flow of water may dig therein, and apply all that is there found to his own purposes, at his free will and pleasure ; and that if, in the exercise of such right, he intercepts or drains off the water collected from underground springs in his neighbor's well, this inconvenience to his neighbor falls within the description of *damnum absque injuria*, which cannot become the ground of an action. The chief justice, in that case, said : " In the case of a well sunk by a proprietor in his own land, the water which feeds it from a neighboring soil does not flow openly in the sight of the neighboring proprietor, but through the hidden veins of the earth beneath the surface ; no man can tell what changes these underground sources have undergone in the progress of time ; it may well be, that it is only yesterday's date, that they first took the course and direction which enabled them to supply the well."

Every person buys land, upon which there is no surface water, with the expectation that he can dig cellars and wells in it for his own use and enjoyment, without interfering with the rights of adjoining proprietors in respect to any thing in the lands of such proprietors. But when water runs across two pieces of land, upon the surface, the purchaser of either piece sees, when he buys, that the proprietor of each piece has rights to such water, with which neither can legally interfere to the injury of the other.

If I have a spring of water issuing out of my land, which is injured or destroyed, by my neighbor digging a well in his dry land to obtain water for agricultural or household purposes, it is my misfortune. It is better that I be compelled to submit to the injury without redress, and dig for water on

my land, than to deprive my neighbor of every use which he may properly desire to make of his land that will interfere with my spring of water. This is a safer and less injurious rule than one that would enable me to prevent every adjoining proprietor from digging in or properly working his land for any purpose that would materially interfere with the natural flow of water from my spring.

This doctrine is not only sustained by the decisions already cited, but it is supported by other adjudications. Putnam, J. in delivering the opinion of the court in *Greenleaf* v. *Francis*, (18 *Pick.* 117,) says : "The proprietor, in the absence of any agreement subjecting his estate to another, may consult his own convenience in his operations above or below the surface of his ground. He may obstruct the light and air above, and cut off the springs of water below the surface." The court of exchequer and house of lords have decided that " the owner of a mill on the banks of a river cannot maintain an action against a land owner who sinks a deep well on his own land, and by pumps and steam engine diverts the underground water which would otherwise have percolated the soil and flowed into the river, by which, for more than sixty years, the mill was worked." *Chasemore* v. *Richards*, 2 *Hurlst & Norm.* 168. 5 *id.* 982.) The decision in *Smith* v. *Kenrick*, (7 *Man. Gr. & S.* 514,) also supports the doctrine I have enunciated. (*See Phear on Rights of Water*, *Law Lib. vol* 75, *pp.* 32, 33, 4*th series.*)

The Supreme Court of Vermont decided, in *Chatfield* v. *Wilson*, (28 *Verm. R.* 49,) that there are no correlative rights existing between the proprietors of adjoining lands, in reference to the use of the water in the earth, or percolating under its surface ; that such water is to be regarded as part of the land itself, to be enjoyed absolutely by the proprietor within whose territory it is ; and to it the law governing the use of running streams is inapplicable. And that decision is supported by one of the ablest opinions on the subject in the books.

The decision in *Roath* v. *Driscoll*, (20 *Conn. R.* 532,) is like that in *Chatfield* v. *Wilson*, (*supra.*)

In *Goodale* v. *Tuttle*, (29 *N. Y. Rep.* 459, Denio,) Ch. J. said : " We have lately decided that the principles which apply to the obstruction of running streams do not govern in the case of waters running under the soil." The decision here referred to was made in *Ellis* v. *Duncan*, at the March term of the Court of Appeals in 1864. But the opinion of the Court of Appeals in that case has not been reported. It probably is the same case decided by this court, and reported in 21 *Barbour*, (*supra*,) Judge Denio cited, approvingly, *Acton* v. *Blundell*, (*supra*,) and *Greenleaf* v. *Francis*, (*supra*,) and remarked : " In these cases it was held that a liability did not attach to the act of one sinking a shaft on his own soil, by which the subterranean waters, which would otherwise have run under the plaintiffs' soil, and have been useful to him, were cut off." (29 *N. Y. Rep.* 466.) This doctrine is approved in *Pixley* v. *Clark*, (35 *id.* 520.) In that case PECKHAM, J. says : " The principle which exempts a party from liability for digging upon and cultivating his own land as he pleases, though he may interfere with subterranean water, is designed for the benefit and protection of the land owner." He cites, among other cases, in support of his views, *Rawstron* v. *Taylor*, (33 *Eng. Law & Eq.* 428,) and *Broadbent* v. *Ramsbotham*, (34 *id.* 553.) Washburn, in his work on *Easements*, (2*d. ed.* 411,) says : " If a person, without any intention to injure an adjacent owner, and while making use of his own land to any suitable and lawful purpose, cuts off, diverts, or destroys the use of an underground spring or current of water which has no known and defined course, but has been accustomed to penetrate and flow into the land of his neighbor, he is not thereby liable to any action for the diversion or stoppage of such water.

In *Frazier* v. *Brown*, (12 *Ohio R.* 294,) it was decided, where a land owner digs a hole on his own land, for purposes connected with the use of his own land, thereby cutting off

or diverting underground waters which have always been accustomed to percolate and ooze through his land to the land of an adjoining proprietor, and there to form the source of a spring and rivulet, any damage thereby occasioned to such adjoining proprietor is *damnum absque injuria*.

*Brown* v. *Illius*, (25 *Conn. R.* 583,) was a case for corrupting the plaintiffs' well by means of noxious matter placed by the defendant on his adjoining land, and in close proximity to the well, which was in part washed by the rains along the surface of the ground into the well, and in part soaked into the ground, and found its way under the surface into the well. And it is not at all in conflict with the previous decision of the same court in *Roath* v. *Driscoll*, (*supra.*)

The case of *Dickinson* v. *Grand Junction Canal Company*, (7 *Exchequer Rep.* 282 ; *S. C.* 9 *Eng. L. and Eq.* 513,) does not overrule *Acton* v. *Blundell*, (*supra.*) The cases are distinguishable. (*See Angell on Watercourses*, § 114, *p.* 124.)

*Parker* v. *Boston and Maine Railroad Co.* (3 *Cush.* 107,) presented the question of the plaintiffs' right to damages, under the statutes of Massachusetts, by drying up his well in consequence of the construction of a railroad near the well. It is not an authority for maintaining this action.

If the course of a subterranean stream be well known, as is the case of many which sink underground, pursue for a short space a subterranean course, and then emerge again, the owner of the soil under which the stream flows, can maintain an action for the diversion of it, if it takes place under such circumstances as would enable him to recover if the stream were wholly above ground. *Angell on Watercourses*, § 114, *a.* *Wheatley* v. *Baugh*, 25 *Penn. R.* 528.)

Redfield's note to *Bassett* v. *Salisbury Man. Co.* (3 *Am. L. Reg. N. S.* 239,) sustains the above proposition. But he says : " It seems these principles do not apply to such subterranean currents as are unknown, or to water percolating through

the soil, but that in regard to these every proprietor may use his own soil, as is most convenient to his own purposes, without thereby becoming responsible in damages for diverting water of percolation or of unknown subterranean currents, from his neighbor's well, or spring, or stream." (*See* 4 *N. Y. Rep.* 195.)

I am aware of the opinion (and it is supported by authority,) that a person is liable to an action for maliciously digging in his own land for the sole purpose of destroying a spring of water issuing out of the land of his neighbor. But that is not this case ; for it is clear the defendant's object in digging in his land, notwithstanding his random declarations, was to obtain a proper supply of water at his house and barn on the same land.

The ruling of Lord Ellenborough, in *Balston* v. *Bensted*, (1 *Camp*. 463,) is against the right of the defendant in this case to dig for water in his land to the injury of the springs of water issuing from the plaintiffs' land. But that ruling was made at Nisi Prius, and it does not appear that any authority was cited to the judge before it was made. That ruling was cited by Chancellor Walworth in support of his dictum, in *Smith* v. *Adams*, (6 *Paige*, 435,) to the effect, that the owner of land out of which a spring of water issues may restrain the owner of adjoining land from digging in his own land so as to intercept the underground stream that supplies the spring with water. But the complaint in that case was dismissed with costs to the defendants ; and it was unnecessary for the chancellor to determine whether the complaint could have been sustained, if the proofs had been different and the statutes had not required him to dismiss the suit. His decision in that case, therefore, is not much authority for the plaintiffs' position in this action. The case of *Dexter* v. *The Providence Aqueduct Company,* (1 *Story*, 387,) differs somewhat from this ; and it seems to be founded upon the ruling of Lord Ellenborough in 1 *Campbell's Reports, (supra.)* The reasoning

of Bartlett, J. in *Bassett* v. *Salisbury Manufacturing Co.*, (3 *Am. Law Reg.* 223,) is in harmony with the decisions in *Campbell* and *Story's Reports*, (*supra.*) But the case is distinguishable from each of the cases in which those decisions were pronounced. It was for setting the water of a stream back, by means of a dam, so as to obstruct the natural drainage from the plaintiff's land, above the dam, to his injury. And I do not see how any one could doubt that such an action would lie. It differs widely from this case.

There was no certainty that the digging by the defendant in this case, in his land, would interfere in the least with the natural flow of the springs on the plaintiffs' land, until such digging was nearly completed; and the defendant is not responsible for what was done without his authority, to the earth under the wall on the line between lands of the parties. That earth was broken away in the night, without the knowledge or consent of the defendant, by some of the deluded persons who were digging in the plaintiffs' springs for gold they had heard had been secreted there.

The question is not in the case whether the plaintiffs could maintain an action against the defendant for damages, for negligence or want of due care in digging in his land, close to the line of the plaintiffs' land, to the injury of the plaintiffs' spring. For the action is brought to restrain the defendant from digging in his land, whatever his object or motives were, to the injury of the plaintiffs' springs. Hence the question to be decided is, whether the defendant had the right to dig in his land to obtain water for proper and necessary uses at his house and barn which were on such land, when by so doing he materially interfered with the natural flow of water from the springs issuing from the lands of the plaintiffs adjoining the defendant's premises.

If the defendant were liable for digging in his land for water, for domestic or agricultural purposes, near the line of the plaintiffs' lands out of which their springs issue, because such digging materially lessened or prevented the flow of

water from such springs, then he and all others would be liable for digging for a like proper purpose in their lands, though a half mile from the plaintiffs' springs, provided such digging would prevent the water issuing from such springs. Such a rule would create more vexation than it would do good, and it might become intolerable. The weight of authority is opposed to such a rule. The decisions in *Campbell* and *Story's Reports,* (*supra,*) and the dictum of Chancellor Walworth in *Smith* v. *Adams,* (*supra,*) are overborne by the numerous opposing authorities I have cited.

I am entirely satisfied that the weight of authority sustains the decision of the special term in the case ; and I must therefore vote for affirming the judgment dismissing the plaintiffs' complaint, with costs.

MASON, J. dissented, and was of the opinion the judgment should be reversed and a new trial granted, costs to abide the event.

Judgment affirmed.

[BROOME GENERAL TERM, November 19, 1867. *Mason, Balcom* and *Boardman,* Justices.]