JOHN C. THOMPSON and HELEN C. THOMPSON, Plaintiffs, v. BOARD OF EDUCATION OF UNION FREE SCHOOL DISTRICT No. 2 OF THE TOWN OF NEWFIELD, N. Y., Defendant.

Supreme Court, Tompkins County, April 29, 1925.

Waters and watercourses — action to restrain school district from using cesspools and for damages arising out of contamination of spring on plaintiffs' land — cesspools were located about 500 feet from spring and on opposite side of highway — use of cesspools ceased as soon as school district was notified of contamination — district was not negligent and had no knowledge of subterranean watercourses through which contamination might be carried — injunction denied — district not liable in damages.

In an action by a property owner to restrain a school district from using cesspools and for damages arising out of the alleged contamination of a spring on plaintiffs' premises in which it appeared that the cesspools were located about 500 feet from the spring and on the opposite side of the highway, the plaintiffs will not be granted an injunction, since it appears that as soon as the school district was notified by the plaintiffs that the cesspools were contaminating their spring, the district ceased using the cesspools. The school district will not be held liable in damages, since it appears that it was not negligent in placing the cesspools or in using them, and that it had no knowledge whatever that there was an underground stream through which the contamination might be carried from the cesspools to the plaintiffs' spring.

ACTION to compel the removal of a nuisance and for damages and to enjoin defendant from permitting contents of its school toilets to be discharged into cesspools, thereby contaminating plaintiff's spring through subterranean watercourses.

Randolph Horton [Riley H. Heath of counsel], for the plaintiffs.

Cobb & Cobb, for the defendant.

HILL, J.:

Defendant's schoolhouse was located twenty-five ‘or more rods westerly from plaintiffs' land and across the highway. Until 1923 those using the schoolhouse were accommodated by two privies, no effort at sanitation being attempted. Pursuant to an order of the Education Department, defendant installed two chemical toilets in the school building. The toilets emptied into tanks, the contents of which were treated with sodium hydroxide, and at a stated period after treatment the contents of the tanks were discharged through sewer pipe into outside cesspools, about twenty-five rods distant from plaintiffs' spring, which it is claimed was contaminated thereby. The complaint alleges that the noxious substance in the cesspools percolated and ran into plaintiffs' spring. Judgment is demanded " that the said nuisance be removed, that

the defendant be enjoined from using the said cesspools or permitting the same to be used," and for damages.

The spring is immediately adjacent to the public highway. The ground upon the spring side of the highway is lower than upon the opposite side, where there are farm buildings, including a privy of the primitive type. A portion of the land is used as a barn yard in which domestic animals are kept, with the result incident thereto. Each of these potential sources of pollution is within five or ten rods of the spring and the highway is only a few feet distant. The top of the spring seems to have been amply protected, but almost anything could have come in through the bottom. There is no open or surface stream of water from the school grounds or from that direction to or toward the spring or to or upon plaintiffs' land. If there was communication between these cesspools and the spring, it was solely by means of a subterranean watercourse or courses. It appears quite possible from the testimony of the experts that there was such communication. Much evidence was given by citizens who had drunk of this spring water in the past, as to its potable and pleasing quality.

Exclusive of the defendant's cesspools, the value of the spring is extremely problematical. Dangerous pollution of water is not necessarily accompanied by an offensive odor or appearance. The cesspools were doubtless one of several sources of pollution.

The defendant caused the chemically treated contents of the inside tanks in the early part of June, 1923, to be dumped into the cesspools. The discoloration and offensive odor of the spring, it is said, occurred shortly thereafter. The matter was called to the attention of the defendant's officers, and there has been no further use of the cesspools. The same have now been filled, and the contents of the tanks is drawn away. There is no suggestion that the officials of the defendant acted otherwise than in the best faith in installing the toilets. They had no knowledge of the course of subterranean water currents. The contents of these cesspools, by ordinary percolation, would not travel 400 or 500 feet, to the injury of the adjacent landowner. Defendant is not liable for this injury if it occurred through no carelessness or negligence on its part, and if it occurred through no lack of regard for the rights of others. Directly the contamination was reported, the defendant removed the cause. Use of the offending agencies had ceased before the action was brought and as soon as attention was called thereto. A landowner is not required, at his peril, to ascertain the course of subterranean streams before he may with safety erect a cesspool or bury, upon his own land, any noxious substance requiring such treatment. If he continued to pollute the subter-

ranean source of the water of another, a different principle might be involved. But with no knowledge and no way of acquiring it, the course of underground water would not make one liable for an otherwise proper and commendable act. In more recent times, cases involving the question raised in this action have been rare.

" The law controlling the rights of parties to surface streams has no application to subterranean water-courses running through unknown channels without a distinct or definite course, unless the subterranean streams have a known and well defined channel constituting a regular and constant flow of water. As to the surface streams the owner of the soil over which it passes has the right of use in the manner which we have already stated; whereas, in the case of subterranean water, it belongs to the soil as a part of it; is owned and possessed as the earth is and may be used, removed and controlled to the same extent by the owner. It is only in exceptional cases that the channels of subterranean streams are known and their courses defined; it is only in such exceptional cases that the owner can know beforehand that his works will affect his neighbor's wells or supply of water, and we are, therefore, of the opinion that in the absence of negligence and of knowledge as to the existence of such subterranean water-courses, when the business is legitimate and conducted with care and skill, there can be no liability if such subterranean courses become contaminated." (*Dillon* v. *Acme Oil Company*, 49 Hun, 565.)

In 40 Cyc. (at p. 632), in a discussion of this question, it is stated: " It is, however, necessary for plaintiff to show that defendant had knowledge, by notice or otherwise, of the injurious effects of his acts."

The plaintiffs are not entitled to an injunction as defendant had ceased the offending acts prior to the bringing of the action, and no liability for damages arose, for the reasons set forth.