John DeBok, Appellee, v. T. C. Doak, Appellant.

**WATERS AND WATERCOURSES:** Waste of Subterranean Percolating Waters. Injunction will lie to restrain the *unnecessary waste* of subterranean percolating waters, to the injury of a lower landowner; especially is this so where the lower proprietor needed such waters for *human* consumption. So held where the upper proprietor, who was drawing off the water through a syphon, was required to reduce the size of his pipe, and to construct tanks to hold the water for hog wallows.

*Appeal from Madison District Court.*—Lorin N. Hays, Judge.

MARCH 10, 1920.

THE plaintiff complained of an alleged injury caused him by a diversion of water on part of defendant. He prayed injunctive relief, and the relief prayed was, in part, granted. Defendant appeals.—*Affirmed.*

*John A. Guiher, W. T. Guiher,* and *Berry & Watson,* for appellant.

*A. W. Wilkinson, Phil R. Wilkinson,* and *J. P. Steele,* for appellee.

SALINGER, J.—I. In the errors relied on for reversal, defendant, appellant, asserts that he had an abundant supply of clear, cool water "flowing from his ground in his pasture for his live stock," and that the court held he was entitled to take all the water he needs for the fullest enjoyment and usefulness of his land, as land. He continues

that, since the maximum amount he has ever attempted to use was limited by what would pass through a half-inch pipe, about 250 feet long, formed into a syphon, and delivering the water to about 7 or 8 feet of a lower level over an intermediate elevation of about 11 feet into a tank for drink for his horses and cattle; that, since it was the excess, only, that he gave to his hogs for drink, and for them to wallow in, in the ravine below his tank, therefore, the court erred in holding: (1) That he was not entitled to have a tank of water, and the water freshened continuously, kept cool in the summer and running in the winter, for drinking by his horses and cattle; (2) erred in holding defendant committed waste in using the water which his horses and cattle did not drink from the tank to furnish drink and make a wallow for his hogs in the ravine below his tank; and (3) erred in holding that, if defendant desired a wallow for his hogs, he must construct tanks for such wallows, and these tanks must not be permitted to leak or overflow, and must be supplied from the escape from his stock tank.

This combination of statement, argument, assignment, and complaint is far from being a strict compliance with what the rules demand of the "errors relied on for reversal," but it is none the less a concession that the brief points and the arguments *in extenso* take an unduly wide range.

The court below did not interfere with anything done by the appellant up to a certain point. No matter how much harm he may have done to the plaintiff by syphoning water into his stock tank, the decree has not interfered with his doing so. If any right given to appellant by the law has been invaded by judicial action, it is by what the decree does concerning the use made of water in the stock tank of defendant, after his horses and cattle had finished with such water. He used it to water and make a

wallow for his hogs. And this review must be limited to ascertaining whether any decretal order made concerning such use of water is violative of law.

II. It is not made as clear as it might be just what action of the trial court is complained of. There were three decrees entered. The last one only was made by Judge Hays. The first decree entered was much more sweeping than the last one entered. In a mixture of opinion and judicial order, it held, in effect, that defendant was unduly trespassing upon the rights of the plaintiff, not only in the provisions for furnishing drink and wallowing places for hogs, but in storing water in tanks for the use of defendant's horses and cattle. The second decree receded from this position, to some extent, but to some extent only. Judge Hays seems to have treated these two earlier decrees as interlocutory and amendable, and we think that this position is warranted. The real question, then, is what was accomplished by the last decree, the one entered by Judge Hays. This decree recites that the judge has visited the premises, and examined them and the spring in controversy. It finds defendant has needlessly wasted water, by permitting his tank to overflow, and letting the overflow run on the ground, in such manner as that large quantities of it were unnecessarily absorbed by the soil and exhausted by excessive evaporation. Defendant is permitted to use the syphon if he will reduce it in size so that it will not create such overflow as the decree prohibits: that is, the syphon must be so used that the supply of water for use of the hogs, and which is derived from overflow from the tanks, is not unduly accreted by needlessly overflowing such tanks. One prominent purpose of the decree is to prevent defendant from permitting water to escape from tanks so that it will run down "the branch," or furnish pools of standing water along the branch for hogs or other stock. No limit is placed on the amount of water defendant may use for

his stock, or for any proper use in operating his farm. Express permission is given defendant to use water for freshening the water in his tanks, and to cleanse the same. The court was of opinion that, instead of permitting water to flow on the ground, and run down the branch or stand along the branch for the purpose of furnishing hogs with water and wallows, defendant should construct a tank or other receptacle for such water, and thus create his pools or wallows and drinking supply without permitting the water to flow over the ground, as it is now flowing; in one word, that drinking water for hogs and for wallows is to be obtained by some means that will take the overflow from the horse and stock tank on without its being needlessly absorbed by the soil or exhausted by evaporation. These are in the nature of findings, and, one might almost say, recommendations. What was, in strictness, the decretal order restrains defendant from permitting "the water from his syphon or tank to overflow or run upon the ground down the branch in such a manner as to be taken up by the soil and unduly evaporated during extreme weather." And he is perpetually enjoined "from permitting the water taken from said spring by use of the syphon or otherwise from escaping from said pipes or from overflow from his tanks in such a manner as to create pools or ponds or hog wallows for his hogs upon the ground." We think we are wholly within bounds in saying, and in repeating, that it has not been made as easy as it might be to determine in just what way the action below has interfered with the defendant. In our best judgment, it is a fair analysis of that action that defendant is not to be interfered with in conducting water to the tanks used by his horses and cattle by means of a syphon, provided he puts no more water into this tank or tanks than is reasonably necessary for the use of his horses and cattle, and for freshening the water in the tank and cleaning the same; that

he is not to let the overflow from these horse and cattle tanks run along the ground, but must take such steps as are reasonably necessary to avoid the waste caused by the water running upon the ground and its evaporation—and the decree indicates what steps will be adequate.

The precise question for our determination is whether such an order as this unduly interferes with the rights of defendant.

III.   Appellant contends that he has, in fact, wasted no water. Without touching, at this time, on whether such waste as the decree finds is permissible, we hold with the trial court that waste is being committed by defendant. He contends further that the water running from his tanks and over the ground flows over the land of the plaintiff, and that plaintiff may therefrom readily obtain a sufficient quantity for the use of his stock. We do not think the evidence sustains this assertion.

IV.   One argument is that what the decree, in effect, accomplishes, is to relieve plaintiff from digging a well of his own, and thus obtaining his water supply; that defendant is under no obligation to construct anything that will save to the uttermost the surplus water in his own tanks—save the water running, after his horses and cattle are through with it; that, if there is to be any conserving of this water, plaintiff, as the beneficiary thereof, should provide the means of conservation. All these arguments are the premise for the ultimate claim that defendant, being the upper owner, has the right to do whatsoever he pleases with any water that runs under the surface of his own land and that of the plaintiff, and with the supply that these underground waters place into the spring, though the spring itself is on the land of the plaintiff. It may be conceded that there was a time when the law sustained this position. The question remains whether that is so still.

We are of opinion that it admits of the gravest doubt.

whether the law ever allowed the upper owner to waste water after it had reached a spring on the land of the lower owner—ever permitted him to interfere with the spring itself. See *Wheatley v. Baugh,* 25 Pa. St. 528; *Gagnon v. French Lick S. H. Co.,* 163 Ind. 687; *Pence v. Carney,* 58 W. Va. 296 (52 S. E. 702); *Willis v. City of Perry,* 92 Iowa 297; *Barclay v. Abraham,* 121 Iowa 619. But we have concluded not to rest the decision of this appeal on the fact that the underground waters in dispute actually reached the spring.

It cannot well be disputed that the law at no time permitted the upper landowner to waste underground waters, if they ran in a well-defined stream. See *Southern Pac. R. Co. v. Dufour,* 95 Cal. 615 (30 Pac. 783); *Wheatley v. Baugh,* 25 Pa. St. 528; *Springfield Waterworks Co. v. Jenkins,* 62 Mo. App. 74; *Barclay v. Abraham,* 121 Iowa 619. In other words, if it were clear that the supply of this spring was an underground stream, with a well-defined channel, the court could enjoin the waste of the waters in that stream, both before they reached the spring and after they reached it. But it is not clear whether the subterranean supply ran in such channel, instead of being created by percolating water, and it is presumed that the supply came from percolating waters. *Barclay v. Abraham,* 121 Iowa 619, 622. In the state of the evidence, we deem it safer ground to assume that the underground waters were percolating. It follows that the decision here must determine whether, though the supply is furnished by percolating water, the decree below is justified.

4-a

It may be assumed that, at one time, the upper landowner was at liberty to deal as he pleased with subterranean percolating waters. We hold with appellant that *Huber v. Merkel,* 117 Wis. 355 (94 N. W. 354), declares that the upper landowner may waste a supply created by such

waters, without liability, though such waste stops the flow of wells on the land of adjoining owners. The question remains whether the weight of more modern authority demands that we should follow this decision. We are willing to say that now, as ever, the chancellor should proceed cautiously in interfering with the use of water by the dominant owner. *Roath v. Driscoll,* 20 Conn. 533. But so proceeding, is not the decree sustained by the law as it stands today?

It is said in *Gagnon v. French Lick S. H. Co.,* 163 Ind. 687 (72 N. E. 849, 852), that the strong trend of the later decisions is toward a qualification of the earlier doctrine that the landowner could exercise unlimited and irresponsible control over subterranean waters on his own land, without regard to the injuries which might thereby result to the lands of other proprietors in the neighborhood; that local conditions, the purpose for which the landowner excavates or drills holes or wells on his land, the use or nonuse intended to be made of the water, and other like circumstances, have come to be regarded as more or less influential in this class of cases, and have justly led to an extension of the maxim, *"sic utere tuo ut alienum non laedas,"* to the rights of landowners over subterranean waters, and to some abridgment of their supposed power to injure their neighbors without benefiting themselves. In *Springfield Waterworks Co. v. Jenkins,* 62 Mo. App. 74, the existence of the older rule is recognized, but held that, despite that rule, the right to appropriate percolating waters is not absolute or unlimited; that the upper owner cannot obstruct or divert it without benefit to himself or his land, merely to injure the adjoining proprietor, who is subjecting it to beneficial use. It is ruled, in *Pence v. Carney,* 58 W. Va. 296 (52 S. E. 702), that while, if the diversion of percolating water is not wasteful, equity will not interfere, although the effect may be to temporarily decrease the supply of wa-

ter in a natural spring found on adjacent land, yet the diversion may not be wasteful, and the right to it is limited to a reasonable and beneficial use of the water, if to use it other than reasonably and for such beneficial use would deprive the adjacent and neighboring lands of the enjoyment of percolating water or natural spring water thereon.

We think *Barclay v. Abraham*, 121 Iowa 619, 621, is in line with these decisions, and holds that equity may interfere, where the upper landowner is utterly wasting water that his neighbor needs. It is true that, in the *Barclay* case, it is found the record strongly indicates that the motive was to maliciously cut off the water supply of the water proprietor. It is also true that the trial court acquitted defendant of having acted through malice. But this was held in connection with, or at least on giving consideration to, a contempt proceeding, instituted for alleged violation of the earlier decrees; and it may fairly be said that the malice which the court found absent was express malice. We think the *Barclay* case speaks of malice as that term is understood in law. There is much in the record that indicates bitter feeling lay behind the insistence of the defendant to obtain his water supply at all costs. But we will assume there was no express malice. We do find, however, that there was malice in law, and that hence the interference by the chancellor was justified, though the water supply interfered with was created by percolating waters only. In so holding, we follow the almost universal declaration of the courts that, where the diversion is malicious and detrimental to another proprietor, injunction may restrain it. See *Miller v. Black Rock S. I. Co.*, 99 Va. 747 (40 S. E. 27). That malice in law is referred to, rather than express malice, is made clear because, for instance, the diversion has been held to be actionable where the harm was caused by negligence (*Wheatley v. Baugh*, 25 Pa. St. 528 [approved in the *Barclay* case]) ; or is caused by reck-

lessness (*Gagnon v. French Lick S. H. Co.*, 163 Ind. 687 [72 N. E. 849]) ; or through indifference (*Pence v. Carney*, 58 W. Va. 296 [52 S. E. 702]).  And *Stillwater Water Co. v. Farmer*, 89 Minn. 58 (93 N. W. 907), strongly indicates that the fact that waste is being committed to the injury of another will, of itself, invoke the powers of the chancery court.

### 4-b

In reaching our final conclusion, we have been moved in some degree by the fact that defendant demands unrestricted license, in order to supply his hogs with drink and wallowing places, while the plaintiff is, among other things, urging his needs in supplying human beings with water. The relative need and use has always had some consideration in equity.  We have held that the use of water for natural purposes takes precedence over the right to use it for artificial ones.  *Willis v. City of Perry*, 92 Iowa 297.  It is ruled, in *Katz v. Walkinshaw*, 141 Cal. 116 (70 Pac. 663 and 74 Pac. 766), that the owner of a portion of a tract which is saturated below the surface with an abundant supply of percolating water may not remove water from wells thereon for sale, if the remainder of the tract is thereby deprived of water necessary for its profitable enjoyment by its owner;  and in *Forbell v. City of New York*, 164 N. Y. 522 (58 N. E. 644), that the drainage of the land of a private owner by means of a city pumping works, which exhausts from the ground and that in its vicinity the natural supply of underground or subterranean waters, and thus interferes with the successful raising of crops, renders the city liable for damages, and gives the owner the right to an injunction against the continuance of such wrong.

Upon a careful examination of the evidence, we hold that, though the interference here was with the use of a supply created by percolating waters, that there was such malicious interference, by means of wasting, to the detriment of

plaintiff, as that the trial court was fully warranted in interfering with the actions of the defendant to the extent that it interfered. It seems to us the decree commands no more than neighborliness should have prompted, without the aid of a court, and that the restraining provisions are just, and not oppressive.

V. The decree first entered taxed all the costs to defendant. The second one entered decreed that defendant pay two thirds of the costs. The final or amending decree seems to have adopted this last order, and so leaves two thirds of the costs to be borne by defendant. This assessment is complained of, but we see no justification for interfering with it.—*Affirmed.*

WEAVER, C. J., EVANS and PRESTON, JJ., concur.