ALICE FLANIGAN, Claimant, *v.* THE STATE OF NEW YORK.

## Claim No. 793–A.

(State of New York, Court of Claims, September, 1920.)

**Percolating waters — when state not liable for damages.**

> Where the state, in digging on its own land for the purpose of canal construction, cuts off underground water that supplied two wells on claimant's farm, no action lies against the state for the damage, and a claim therefor will be dismissed.

CLAIM for damages for destruction of two wells on the property of claimant.

Rogers & Sawyer, for claimant.

Charles D. Newton, attorney-general (Harry W. Ehle, deputy attorney-general), for state.

MORSCHAUSER, J. The above-named claimant filed a claim against the state of New York alleging that she had sustained permanent damages by the destruction of two wells on her property in the town of Kingsbury, Washington county. The claimant originally owned a large tract of land consisting of a farm and by proper proceedings the greater portion of it was appropriated by the state for the improvement of the Champlain canal. There was about thirty-five acres of land that was not appropriated belonging to the claimant upon which the claimant had a dwelling-house, a barn and other structures and the two wells in question. Westerly of her premises the state constructed the improved Champlain canal and still further west there was a large tract of level land and plateau. The claimant alleges that a large quantity of rain fell on the plateau and seeped through the soil and in that manner formed a subterranean stream which supplied the wells on the claimant's premises with water. The claimant's claim is that when the state constructed its canal it lowered the water table and to such an extent that it withdrew the source of supply of such water from the wells of the claimant and destroyed their usefulness.

Section 47 of the Canal Law provides as follows:

" Sec. 47. Claims for damages.— There shall be allowed and paid to every person sustaining damages from the canals or from their use and management, or resulting or arising from the neglect or conduct of any officer of the state having charge thereof, or resulting or arising from any accident, or other matter or thing connected with the canals, the amount of such damages to be ascertained and determined by the proper action or proceedings before the court of claims; but no judgment shall be awarded by such court for any such damages in any case unless the

facts proved therein make out a case which would create a legal liability against the state, were the same established in evidence in a court of justice against an individual or corporation; * * * provided that the provisions of this section shall not extend to claims arising from damages resulting from the navigation of the canals.''

By this section the state waives immunity and assumes liability for damages sustained by reason of the construction of its canals but provides that the state shall not be liable unless all the facts proved therein make out a case which would create a legal liability against the state were the same established in evidence in a court of justice against an individual or corporation. So that before the state can be held liable in damages by reason of the construction of the canal the claimant must establish by legal evidence some act or neglect which would make an individual liable to another under the same circumstances. Therefore, in deciding this case the rule of law is to be applied the same as though the action was by one individual against another.

The text writers all define percolating water to include all waters which pass through the ground beneath the surface of the earth, without a definite channel and not shown to be supplied by a definite flowing stream, and the general rule is that such percolating water is subject to the absolute disposition of the owner of the realty where it is found, and there is, therefore, no correlative right on the part of an adjoining owner to have such water reach or flow on to his land. The exception is that where a subterranean stream flows in a distinct, permanent and well-defined channel, it is governed by the same rules as apply to a natural water course on the surface; and the owners of land beneath which it flows have the

same rights in respect to it as riparian proprietors have with respect to a stream on the surface, and the same is true with respect to large bodies of underground water located in well-defined strata. But all underground waters are presumed to be percolating, and to take them out of the rule in regard to such waters the existence and course of a permanent channel must be clearly shown.

The rule of law as to percolating waters was very clearly stated in the action of *Smith* v. *City of Brooklyn,* 18 App. Div. 340, in the opinion written by Judge Hatch. In that case Judge Hatch citing the case of *Acton* v. *Blundell,* 12 M. & W. 324, decided in the Exchequer Court of England, by Chief Justice Tindal, and also the more modern decisions in this country, one in Pennsylvania (*Wheatly* v. *Baugh,* 25 Penn. St. 528), and one in Ohio (*Frazier* v. *Brown,* 12 Ohio St. 294), said: "In the last case the learned judge who wrote stated the principle and the reasons therefor in the following language:

"'The reasoning is briefly this: In the absence of express contract, and of positive authorized legislation as between proprietors of adjoining lands, the law recognizes no correlative rights in respect to underground waters percolating, oozing or filtrating through the earth, and this mainly from considerations of public policy. 1. Because the existence, origin, movement and course of such waters, and the causes which govern and direct their movements, are so secret, occult and concealed, that an attempt to administer any set of legal rules in respect to them would be involved in hopeless uncertainty, and would be, therefore, practically impossible. 2. Because any such recognition of correlative rights would interfere to the material detriment of the common wealth, with drainage and agriculture, mining, the construction of highways and railroads, with sanitary regulations, building, and the

general progress of improvement in works of embellishment and utility.

" ' The decisions of this State, ancient and modern, are committed to this view of the law, including this tribunal ' and cites *Ellis* v. *Duncan,* 21 Barb. 230; *Bloodgood* v. *Ayres,* 108 N. Y. 400; *Van Wycklen* v. *City of Brooklyn,* 118 id. 427; *Covert* v. *City of Brooklyn,* 6 App. Div. 73."

In the case of *Pixley* v. *Clark,* 35 N. Y. 520, 527, Judge Peckham, writing the opinion for the court, said: "An owner of the soil may divert percolating water, consume or cut it off, with impunity. It is the same as land, and cannot be distinguished in law from land. So the owner of the land is the absolute owner of the soil and of percolating water, which is a part of, and not different from the soil. No action lies against the owner for interfering with or destroying percolating or circulating water under the earth's surface."

In *Matter of Village of Delhi* v. *Youmans,* 45 N. Y. 362, it was held: "An action will not lie against an owner of land, who, in digging a well upon his own premises, intercepted the percolation or underground currents of water, and thereby prevented their reaching the springs or open running stream on the soil of another," and Judge Peckham writing the opinion for the court in this case said: " If the action of the defendant took the water away from the springs, after it had reached there, after it had become part of an open, running stream, then this action would lie. But if it merely prevent the water from reaching the spring or open running stream, by intercepting its percolation or underground currents, by digging a well upon the defendant's own land, for the use of his family and stock, this action will not lie. The law is settled in that way, both here and in England."

In *Bloodgood* v. *Ayers,* 108 N. Y. 400, it was held:

"A spring, from which no stream or watercourse runs, but the source of which and the flow of its waste or surplus waters are alike under ground, and so, matters of speculation or uncertainty, belongs to the owner of the land and he may divert and use the waters.

" Except as regards certain underground streams or rivers which are known and notorious and flow in natural channels between defined banks, sub-surface currents or percolations are not governed by the rules and regulations respecting the use and diversion of water-courses, and they may be intercepted or diverted by the owner of the land for any purpose of his own."

In *Ellis* v. *Duncan,* 21 Barb. 230; affd., 26 How. Pr. 601, it was held: " The owner of a farm may dig a ditch to drain his land, or open and work a quarry upon it, although by so doing he intercepts one of the underground sources of a spring on his neighbor's land, which supplies a small stream of water flowing partly through the land of each, and thereby diminishes the natural supply of water, to the injury of the adjoining proprietor.

" The rule that a man has a right to the free and absolute use of his property, so long as he does not directly invade that of his neighbor, or consequently injure his perceptible and clearly defined rights, is applicable to the interruption of the sub-surface supplies of a stream, by the owner of the soil; and the damage resulting from such an interruption is not the subject of legal redress."

In *Smith* v. *City of Brooklyn,* 18 App. Div. 340; affd., 160 N. Y. 358, the facts were clearly distinguishable from the facts in the case on trial. There the water taken from the plaintiff was a stream of water running in a well-defined channel fed by springs and other sources. A brook had been dammed

on the plaintiff's premises and formed a pond and had been in existence over fifty years and the water remained in both the year round. The plaintiff used the pond for boat building and securing ice. The defendant at a distance from the city upon land purchased by it, whose soil admits of the ready percolation of water, constructed upon this land a reservoir, aqueduct and culverts, or conduits, for holding and carrying the water. In the process of construction of these water works the city of Brooklyn excavated a trench, which, at Freeport, was about twenty-seven feet below the surface of the ground, in which it placed a box for carrying the water during the construction of the work, and to operate as a conduit for the same thereafter. It also sunk a number of wells and connected them with powerful steam suction pumps. The effect of the operation by the city withdrew the water from the plaintiff's premises and its act had the effect of lowering the spring level in the entire vicinity resulting in the destruction of the brook and pond and the destruction of the wells throughout a considerable area of country in that locality, and while the water in that case was obtained by the city by underground currents and percolation the effect of its work was to destroy the plaintiff's stream and pond by withdrawing the supply which fed the plaintiff's stream and pond.

This was substantially the same condition in *Forbell* v. *City of New York,* 164 N. Y. 522, where it was held: "A municipal corporation which, by the operation of a water system consisting of wells and pumps on its own land, taps the sub-surface water stored in the land of an adjacent owner and in all the contiguous territory, leads it to its own land and by merchandising it prevents its return, whereby the value of the land of such owner is impaired for agri-

cultural purposes, is liable to him in trespass for the damages occasioned thereby.''

In *Hathorn* v. *Natural Carbonic Gas Co.*, 194 N. Y. 326, it was held: '' Independent of statutory prohibition a landowner has no right, by the use of pumps and other apparatus, greatly and unreasonably to accelerate and increase the natural flow of subterranean percolating mineral waters and gas through deep wells bored into a widely extended common supply of such substances, not for any purpose connected with the enjoyment of his lands, but for the purpose of procuring from the waters a supply of gas to be marketed throughout the country, and with the result of wasting great quantities of mineral waters and of destroying or impairing the natural flow of such waters and gas in and through the springs of other landowners throughout a large area, and of destroying or impairing the valuable character of such waters for the purposes for which they have been habitually used.''

In the case of *Merrick Water Co.* v. *City of Brooklyn*, 32 App. Div. 454, the court in writing the opinion citing the case of *Smith* v. *City of Brooklyn*, says: '' That case presented the question of the relative right of the defendant and an adjoining landowner, who made use of his land and the running stream and pond thereon in connection with the land and for the purposes of its beneficial enjoyment. And this court held that as the defendant collected the water upon its land, not for any purpose of beneficial enjoyment of the land itself, but for purposes of transportation and sale at a distant place to others having no right to it as against the owner of the land who was deprived of his stream and pond, it was an unlawful diversion of the water by the defendant for which the plaintiff had his right of action. And we further

held that under the circumstances of that case the act of the defendant diverted the water from a running stream in which the plaintiff had a property right and that such diversion was unlawful. But being mindful of the delicate nature of the question we were deciding, we expressly limited the rule to the particular case and its facts, announcing that no fixed rule could be laid down, but that each case must rest upon its particular facts as applied to the doctrine of reasonable use and relative rights. The effect of that decision was to limit the right to divert percolating water by an adjoining owner of land to cases where the diversion was produced by the exercise of a legal right to improve the land or make some use of the same in connection with the enjoyment of the land itself, for purposes of domestic use, agriculture or mining, or by structures for business carried on upon the premises, or other improvements either public or private. We recognize the rule that no liability was created by such use of the land, even though the effect of it was to divert the percolating water from the land of the adjoining owners. This rule is firmly settled in the law of this State and elsewhere, as appears by the decisions cited upon page 342 of the Smith case, and is only qualified by the diversion of water from a running stream which has existed from time immemorial.''

If a landowner had dug a trench or cellar, quarried stone or carried on mining operations on his own land and thereby destroyed or cut off subterranean or subsurface waters supplying his neighbor's well no legal liability would thereby be created against such adjoining landowner, and on the same principle when the state dug through its land for the purpose of constructing a canal even if in so doing it cut off the underground water that supplied the claimant's well no action will lie against it.

Applying the principles of law in the cases cited above if the action was brought by one individual against another for the diversion or destruction of subterranean water no legal liability would exist against the owner of adjoining land who destroyed such underground or subterranean water. The claim should be dismissed.

ACKERSON, P. J., concurs.

Claim dismissed.